Archie Leon HESTER, Jr., individually and as Treasurer of A.L. Hester Farms, Inc.; Barbara Ann Hester, Jr., individually; Jeffrey Kent Hester, individually and as Secretary of A.L. Hester Farms, Inc.; June E. Hester, individually and as President of A.L. Hester Farms, Inc.; and A.L. Hester Farms, Inc., Plaintiffs,

v.

FARMERS HOME ADMINISTRATION; John O. Foster, individually and as Missouri State Director of Farmers Home Administration; John Harvey, individually and as Chief of Farmer Programs of Missouri Farmers Home Administration; Gareld W. Calfee, individually and as a Farmer Program Specialist attached to the Missouri State Office of Farmers Home Administration; Harry C. Vogt, individually and as District Director for Farmers Home Administration in Ellington, Mo.; and Gerald C. Noland, individually and as a County Supervisor for Farmers Home Administration, Marble Hill, Missouri, Defendants.

No. S84–0105C (D).

United States District Court, E.D. Missouri, Southeastern Division.

April 1, 1985.

---

Joseph F. Devereux, Jr., Timothy R. Barrett, St. Louis, Mo., Thomas D. Kershaw, Jr., Thomas M. Sheridan, Klamath Falls, Or., for plaintiffs.

Robert L. Purcell, Regional Atty. by Philip B. Green, U.S. Dept. of Agriculture, Kansas City, Mo., Edwin B. Brzezinski, Asst. U.S. Atty., St. Louis, Mo., for defendants.

## MEMORANDUM

WANGELIN, District Judge.

This matter is before the Court upon defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules. This Court's jurisdiction is invoked pursuant to Title 5

U.S.C. §§ 702 and 706 and 28 U.S.C. §§ 1331, 1343, and 1346(a).

Plaintiffs Archie Leon Hester, Jeffrey Kent Hester, and E. June Hester are stockholders and officers in plaintiff A.L. Hester Farms, Inc., a family farm corporation, organized and operated under the laws of the State of Missouri. Defendant United States of America acted through its agency, the Farmers Home Administration (FmHA). The individual defendants are officials and/or employees of FmHA.

Plaintiffs allege the following: Plaintiffs Archie Leon Hester, Jr. and Barbara Ann Hester have obtained Farmer Program loans from defendant FmHA since 1976 pursuant to the Consolidated Farm and Rural Development Act. Plaintiff Jeffrey Kent Hester has obtained similar loans since 1978. Archie and Jeffrey Hester farmed together on land which they rented from plaintiff A.L. Hester Farms, Inc. and on land owned by Archie Leon Hester.

On April 14, 1981, Archie Hester entered into a written contract by which he agreed to pay A.L. Hester Farms, Inc. Seventy Five Dollars ($75.00) per deeded acre as cash rent for the use of five hundred fifty three (553) acres of farmland owned by the corporation; Jeffrey Hester entered into a similar contract for two hundred forty seven (247) acres that same day. On July 15, 1981, in consideration for the Bank of Bloomfield's (the Bank's) agreement to loan Archie and Barbara Hester One Hundred Twelve Thousand Dollars ($112,-000.00), FmHA subordinated in favor of and assigned the bank liens or security interests in all of the Hesters' farm machinery and the majority of their crops. On October 22, 1981, FmHA issued another subordination agreement in the amount of Seventy Thousand Dollars ($70,000.00) FmHA also subordinated liens and security interests in plaintiff Jeffrey Hester's machinery and crops. The exact amount of the subordination is unknown to plaintiffs.

Plaintiffs allege that through the subordination agreements defendant United States, by and through FmHA and defendant Gerald C. Noland, agreed to a number of conditions: (a) to consent for plaintiffs to obtain the loans from the Bank; (b) that one of the purposes for the loan was to finance the plaintiff's annual operating expenses; (c) that the loan proceeds would be deposited in a "supervised" checking account where checks would have to bear the signature of defendant Noland as well as plaintiffs; (d) that defendant Noland would sign checks for plaintiff's annual operating expenses; (e) that FmHA would subordinate its liens and security interests in plaintiff's property to the Bank. Plaintiff allege that dispite the terms of the agreement, the Federal defendant and defendant Noland failed to issue the loan proceeds deposited in the supervised bank accounts to pay plaintiff's cash rent.

On July 24, 1981, at the request of defendant Noland, Archie and Jeffrey Hester entered into a formal partnership agreement to farm under the name of Hester Brothers Farming Company. The financial difficulties plaintiffs encountered in 1980 and 1981 led to a default of plaintiff's FmHA payments. Consequently, plaintiff met with defendant Noland in December of 1981 or January of 1982. The parties decided that the plaintiffs would sell their farm machinery at a public sale, and that Archie and Barbara Hester would sell their farm at the same sale or quickly thereafter.

Plaintiffs allege that if defendants had notified them of 7 U.S.C. § 1981a they would have applied for a deferral under that section rather than liquidate their equipment and land.

Plaintiffs further allege that the contract entered into between them and defendant United States of America for the sale of the farm equipment failed to include the Bank of Bloomfield. The Bank was a necessary party to any attempt to sell the equipment because the liens which had been held by defendant United States of America had subsequently been subordinated and assigned to the bank.

On March 8, 1982, the Board of Directors of plaintiff A.L. Hester Farms, Inc. authorized the purchase of machinery and grain

bins at the upcoming auction and authorized the application of a loan from the Bank of Bernie to be used for the purchase of machinery, operating, and incidental expenses. Plaintiffs allege that there was an understanding that the loan monies for the purchase of machinery would be needed only in the event that the proceeds from the life insurance of Archie Hester, Sr., who had died on January 2, 1982, did not arrive in time to pay for the machinery purchased at the sale. Plaintiffs allege that they informed defendant Noland of the corporation's plan to purchase the machinery and that he had no objections.

The auction was held on March 9, 1982. Plaintiff A.L. Hester Farms, Inc. purchased One Hundred Thirty Five Thousand Six Hundred Forty Eight Dollars ($135,648.00) worth of equipment at the auction. Plaintiff was unable to pay for the equipment after the auction, however, because the proceeds from the life insurance of Archie Hester, Sr. had not been delivered. Archie Hester, Jr. assured the auctioneer that the money should arrive any day or, failing that, that a bank loan would be obtained to secure payment.

On March 10, 1982, the auctioneer relayed this information to defendant Noland. On that same day, plaintiff Archie Hester also informed defendant Noland of the delay in payment. Plaintiff states that defendant indicated no opposition to the arrangement. Subsequent complaints from borrowers, however, initiated an investigation of the sale. On March 12, 1982, plaintiffs discussed the circumstances of the sale with defendants Noland and Vogt as well as the plan to finance the purchases. Plaintiff Archie Hester allegedly told the defendants that the funds necessary to purchase the machinery would be available on or before March 23, 1982. Plaintiff avers that defendants agreed to wait until that date.

Three days later, however, defendant Noland met with plaintiffs Archie Hester, Jr. and Jeffrey Hester and informed them that the equipment purchased by A.L. Hester Farms, Inc. was to be declared a "no sale" by the FmHA. Plaintiffs were then presented with a Notice of Acceleration and Demand For Payment. Plaintiffs stated their opposition to the acceleration of their accounts and the declaration of "no sale." They requested information concerning how to appeal the decision, but defendant Noland allegedly told them that it would be useless.

On March 16, 1982, plaintiff Archie Hester, Jr. telephoned the state FmHA office and scheduled an appointment for March 19, 1982. On the following day, plaintiffs allege that defendant Vogt sent to defendant Foster a report which stated that the public sale had been improper. At the March 19 meeting, defendant Foster refused plaintiff's offer of payment, stating that plaintiffs had rigged the sale, but declining to specify the source of his information. Defendant Foster then informed plaintiffs of FmHA's decision to repossess the equipment sold to A.L. Hester Farms, Inc. Plaintiffs further aver that defendant gave them no notice of how they could appeal the decision and, moreover, assured plaintiff's that "You'll never be back with this agency as long as I'm here."

Plaintiffs' farm machinery was then repossessed by FmHA. The agency employed the Crader Equipment Company to move and store the machinery and Macke's Farm Equipment to disassemble and transport a grain bin. The charges for these services amounts to Ten Thousand Two Hundred Fifteen Dollars and Forty Cents ($10,215.40) and were deducted from the accounts of plaintiffs Archie and Jeffrey Hester. The loss of the grain bin also caused a significant amount of plaintiffs' rice crop to spoil resulting in claimed losses of Thirty Two Thousand Seven Hundred Seven Dollars ($32,707.00). A second sale of plaintiffs' farm machinery and equipment was held on April 23, 1982. It netted Four Thousand One Hundred Eighty One Dollars and Fifty Eight Cents ($4,181.58) more than the first sale, not including the losses incurred by the plaintiffs in the form of lost crops and storage costs.

Following unsuccessful attempts to determine why a "no sale" had been declared, plaintiffs requested a hearing from defendant Foster. This letter was also unavailing. Plaintiffs allege that defendants have purposely withheld facts and information concerning the basis of defendants' adverse actions against plaintiffs and their property.

On June 1, 1983 Archie Hester, Jr. applied for a farm loan from the FmHA. Plaintiff was notified on July 7, 1983 that he was ineligible for the loan by the Stoddard County FmHA supervisor Lee Bloomfield. This decision was appealed to defendant Foster, the Missouri FmHA State Director. A hearing was subsequently held on August 24, 1983 in which plaintiff submitted testimony and evidence. Plaintiff was informed on September 8, 1983 of defendant Foster's decision that he was upholding the County Committee's decision. Defendant Foster gave as his reason for upholding the Committee's decision that " ... it is our opinion you do not meet the eligibility requirements for an FmHA operating loan in that you do not have the character as related to repayment ability, managerial ability and industry necessary to carry out the proposed operation."

Plaintiff alleges that defendant Foster's decision was contrary to the evidence and testimony and was, in fact, a manifestation of his original promise to disassociate plaintiffs from the operations of the FmHA.

Plaintiff appealed the decision to the Deputy Administrator for FmHA Program Operations. Defendant Foster's decision was upheld.

On January 9, 1984 plaintiff Archie Hester, Jr. filed another application for a loan with the Stoddard County FmHA. Plaintiff contends that this application was based on a Farm and Home plan which was substantially different from his previous application. This application was also denied. Moreover, plaintiff was told that he could not appeal the decision because there was no substantive change from the former application which had been denied, appealed, and upheld.

Archie Hester, Jr. subsequently requested in writing to defendant John Foster that he review the accuracy of the findings made by the Stoddard County FmHA Supervisor and County Committee. Defendant Foster replied that the adverse decision was unappealable. Plaintiff alleges that this reply was not in accordance with the pertinent facts and thus reveals the bias that defendant Foster had toward the plaintiffs. Archie Hester, Jr. alleges that a visit he made to Lee W. Bloomfield, Stoddard County Supervisor, resulted in Bloomfield telling plaintiff that he would be unable to obtain a loan from the FmHA during the present administration because the " ... State Office doesn't like [you]."

Plaintiff Archie Hester, Jr. alleges that defendants Foster, Harvey, and Calfee have conspired to pressure the Stoddard County FmHA into denying him any loan application, and that defendant Foster has resolved to deny any appeal made by plaintiff of the rejected loan application. Plaintiffs further aver that as a result of defendants' actions they have suffered one or more of the following damages filed and been discharged from bankruptcy pursuant to Chapter 7 of the Bankruptcy Code; loss of their farm and all equity in it; loss of any profits that might have been made as an individual and as a stockholder in A.L. Hester Farms, Inc.; in the case of corporate plaintiff, lost rent monies owed by the co-plaintiffs; damage to reputation in the community; and mental distress.

Plaintiffs claim as their first cause of action that the individual defendants, acting under color of state law, deprived them of their rights under the Fifth Amendment and deprived them of protectible liberty and property interest. Plaintiffs' second cause of action alleges that the defendant United States of America breached the terms of three contracts with the plaintiffs, causing them injury compensable under the Tucker Act, 28 U.S.C. § 1346. Each defendant claims Ten Thousand Dollars ($10,000.00) in damages under this claim.

Defendants have moved for summary judgment and to dismiss on a number of grounds. First, defendants submit that this Court lacks subject matter jurisdiction over plaintiffs' second claim for relief. Defendants premise this argument under the provisions of 28 U.S.C. § 1346. This statute provides, in pertinent part:

> The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
>
> Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

When the amount of controversey exceeds Ten Thousand Dollars ($10,000.00), exclusive jurisdiction lies with the Court of Claims pursuant to 28 U.S.C. § 1491, which does not require a jurisdictional amount. Thus, the government reasons that plaintiffs should be allowed to prosecute their claim only with the Court of Claims.

This Court disagrees. Although the aggregate claims of the various plaintiffs equal Fifty Thousand Dollars ($50,000.00), the jurisdictional amount is based on the individual claims. In *Graham v. Henegar,* 640 F.2d 732 (5th Cir.1981), suit was brought by a group of fire fighters to recover unpaid overtime compensation and other damages, along with attorney's fees, pursuant to the Fair Labor Standards Act. Although the Court of Appeals held that the Court of Claims should have exclusive jurisdiction over the cause, it did so because the plaintiff requested Ten Thousand Dollars ($10,000.00) each *plus* attorney's fees. *Id.* at 736. The fact that each plaintiff had requested Ten Thousand Dollars ($10,000.00), however, was insufficient to divest the district court of its concurrent jurisdiction. Accordingly, the Court finds that it should not relinquish jurisdiction of plaintiffs' claim under the Tucker Act. *See also Glover v. Johns-Manville Corp.,* 662

F.2d 225 (4th Cir.1981), *March v. United States,* 506 F.2d 1306, 1309 n. 1 (D.C.Cir. 1974).

Defendants also assert that the subordination agreements were for the procurement of services benefitting FmHA and therefore fall within the contracts enumerated in 41 U.S.C. § 602(a), the Contract Disputes Act of 1978. This statute provides:

> Unless otherwise specifically provided herein, this chapter applies to any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of Title 28) entered into by an executive agency for—
>
> 1. the procurement of property, other than real property in being;
> 2. the procurement of services;
> 3. the procurement of construction, alteration, repair or maintenance of real property; or,
> 4. the disposal of personal property.

If this statute was applicable, then plaintiffs would have to submit their dispute to a contracting officer for decision under 41 U.S.C. § 605 and only the Court of Claims or the United States Court of Appeals for the Federal Circuit would have jurisdiction. 41 U.S.C. § 609(a) and § 607(g).

To place this transaction within the confines of 41 U.S.C. § 602 would strain the language of the statute. The statute clearly relates to a contract by an executive agency for the procurement of services. The loans herein were between plaintiffs and defendant to implement a national policy related to farming. The fact that defendant later subordinated the agreement to certain private financial institutions does not transform the contracts into ones for which the government is procuring services. Therefore, the Court finds that 41 U.S.C. § 602 does not work to divest it of jurisdiction.

Because this Court has determined that it has jurisdiction pursuant to 28 U.S.C. § 1346(a)(2) and *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91

S.Ct. 1999, 29 L.Ed.2d 619 (1971) and 28 U.S.C. § 1331 over both of plaintiffs' claims for relief, it need not consider (nor, in fact, do plaintiffs dispute) defendants' argument that it does not have jurisdiction pursuant to 28 U.S.C. § 1343 and 5 U.S.C. § 701 *et seq.* Hence, defendants' jurisdictional arguments with respect to these statutes will be considered moot.

Beyond their jurisdictional arguments defendants present an array of contentions in support of their motion. Rather than deal with each point in turn, the Court believes that two contentions of particular merit are sufficient to warrant summary judgment in defendants favor.

■ Defendants point out that plaintiffs Jeffrey Kent Hester, Archie Leon Hester, Jr., and Barbara Ann Hester filed bankruptcy on December 7, 1982. Thus, they lack standing to pursue any claims because those claims became part of the bankruptcy estate. 11 U.S.C. § 541(a)(1). Moreover, because the claims were not scheduled in the Bankruptcy Court they were not abondoned once the case was closed. 11 U.S.C. § 554; 4 *Collier on Bankruptcy,* 15th Ed., § 554.03. Therefore, the claims of Jeffrey, Barbara, and Archie Hester, Jr. which arose prior to December 7, 1982 remain the property of the bankruptcy trustee and are not properly before the Court.

A review of the complaint reveals that the only actions complained of subsequent to December 7, 1982 were the denial of plaintiffs' loan applications with the Stoddard County FmHA. Considering that plaintiffs had declared bankruptcy, this denial could hardly be termed unreasonable. Despite this, plaintiffs were provided an opportunity for a hearing on August 24, 1982 and allowed to present any evidence in their favor. The decision of the County Committee was upheld up to and including the level of the Deputy Administrator for FmHA Program Operations. In short, the Court can find no conduct on the part of the defendants which begins to approach stating a claim for violation of plaintiffs' constitutional rights following plaintiffs' declaration of bankruptcy. See *Tuepker v.*

*Farmers Home Administration,* 708 F.2d 1329 (8th Cir.1983).

■ Furthermore, defendants contend, and this Court agrees, that E. June Hester and A.L. Hester Farms, Inc. do not have standing to pursue any claim because they never dealt with defendants directly. They were not borrowers, guarantors, applicants, or pledgors either on their own behalf, for each other, or for Archie, Jr. or Jeffrey Hester.

■ Furthermore, even if these defendants had standing to pursue their claims, they would be barred by defendants' qualified immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) the Court ruled that the test for qualified immunity must rest on objective factors.

> Consistently with the balance at which we aimed in *Butz* [*v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) ], we conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Employing this standard, the Court finds that defendants did not violate any clearly established statutory or constitutional rights with respect to the corporate plaintiff and E. June Hester. Indeed, nearly all of the allegations in the complaint deal with plaintiff Archie Hester, Jr.'s interaction with the FmHA.

Defendants must evaluate and determine loan applications for a number of farmers. In carrying out these discretionary actions there will clearly be disappointed applicants who may resort to legal action. It is precisely for situations such as this that the United States Supreme Court adopted an objective rather than a subjective test to

600

determine whether suit should proceed. For this reason, and the reasons delineated, *supra*, defendants' motion for summary judgment must be granted.