**JONES MOTOR CO., INC., Plaintiff,**

v.

**TELEDYNE, INC. and the United States of America, Defendants.**

**Civ. A. No. 86–358 LON.**

United States District Court, D. Delaware.

July 25, 1988.

---

Clark W. Furlow of Lassen, Smith, Katzenstein & Furlow, Wilmington, Del., and Philip W. Vogler (argued) of Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for plaintiff.

R. Franklin Balotti, and William W. Bowser, of Richards, Layton & Finger, Wilmington, Del., and James P. Gallatin, Jr. (argued) of McCamish, Ingram, Martin & Brown, Washington, D.C., for defendant Teledyne, Inc.

Sue L. Robinson (formerly of the Dept. of Justice, argued) and David Weiss of the Dept. of Justice, Wilmington, Del., for defendant U.S.

## OPINION

LONGOBARDI, District Judge.

Jones Motor Co., Inc. ("Jones Motor"), a motor common carrier of property, filed its complaint on or about August 21, 1986, against Teledyne, Inc. ("Teledyne") and the United States Government ("United States" or "Government") for breach of contract seeking damages in the amount of $62,100. Plaintiff contends that jurisdiction against the United States is based upon 28 U.S.C. § 1346 (the "Tucker Act"). As to Teledyne, jurisdiction is based upon 28 U.S.C. § 1332. Teledyne answered the complaint and cross-claimed against the Government seeking to have the Government indemnify and hold harmless Teledyne.

The Government answered the complaint and cross-claimed by asserting lack of subject matter jurisdiction over both Jones Motor's claim and Teledyne's cross-claim. Docket Item ("D.I.") 8. Presently before the Court is the Government's motion for summary judgment based upon its jurisdictional defenses. The United States first contends that this Court is divested of jurisdiction over both parties' suits under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 ("the Act"). Secondly, the Government argues that if the Act does not apply, both Jones Motor and Teledyne's

claims should be dismissed for the amount in controversy exceeds the Tucker Act's jurisdictional maximum of $10,000. The Court will address the Government's arguments seriatim.

Teledyne and the United States, acting through its Army Tank Automotive Command, entered into Contract No. DAAE07–82–C–0202 (the "Prime Contract"). D.I. 7. The Prime Contract was for production of an initial quantity of 1,277 tank engine assemblies, Mode AVDS Series 1790, for delivery as specified by the contract. D.I. 19, Affidavit of James Young attached. Of these engine assemblies, 323 were ordered on behalf of and for delivery to the Republic of Turkey pursuant to a Foreign Sales Agreement. *Id.* According to the terms of the Prime Contract, the engine assemblies were to be shipped in accordance with the instructions of the Administrative Contracting Officer or his duly authorized representative. D.I. 7. As required by the Prime Contract, Teledyne sought instructions for the shipments. Among other things, Teledyne was instructed to issue commercial bills of lading "Third Party Billing." D.I. 7, Exhibit D. The bills of lading were to be annotated with "TRANSPORTATION CHARGES ARE GUARANTEED BY TRANSPORTATION OFFICE, DCASMA GRAND RAPIDS, 678 FRONT ST., N.W., GRAND RAPIDS, MI 49504." *Id.*

On October 3, 1985, Jones Motor transported some of the engine assemblies that were ordered on behalf of and for the Republic of Turkey. D.I. 1. Jones Motor delivered the goods pursuant to the bill of lading and charged Teledyne $1,150 for the services. Jones Motor provided the identi-

cal services for Teledyne on 53 separate occasions during the period October 3, 1985, through December 11, 1985. *Id.* Jones Motor billed the same rate for its services and each shipment was done pursuant to a separate bill of lading. *Id.* Jones Motor has not been paid for any of its deliveries and, as such, is owed a total of $62,100 ($1,150 × 54), plus any accrued interest.

Jones Motor instituted this action in order to collect payment either from Teledyne or from the United States based upon the guaranty found on each bill of lading. Neither Jones Motor nor Teledyne have filed a claim in accordance with the Act with the Administrative Contracting Officer in regard to this dispute. D.I. 19.

The Government's first basis for its summary judgment motion is that the Act divests this Court of jurisdiction. The Government first directs the Court's attention to the legislative history of the Act to show that Congress intended to encourage resolution of contract disputes through negotiation. D.I. 29 at 8, citing *Great Lakes Educ. Consultants v. Fed. Emerg. Manage.*, 582 F.Supp. 193 (W.D.Mich.1984); S.Rep. No. 95–1118, 95th Cong., 2d Sess. 1 (1978), *reprinted* in 1978 U.S.Code Cong. & Admin. News 5235. The Government argues further that the Act, in fact, divests the district courts of jurisdiction [1] and that the "district courts play no role whatsoever in the Act's dispute resolution mechanism." D.I. 19 at 9. Finally, as it must in order to make its argument complete, the Government contends that the contracts at issue are covered by the Act. D.I. 24.

---

**1.** The United States cites *McDonnell Douglas Corp. v. United States*, 754 F.2d 365 (Fed.Cir. 1985), for support for its proposition. This Court would note that the following sources also support the Government's proposition that the Act divests this Court of jurisdiction over disputes arising out of contracts *covered* by the Act. *Coffey v. U.S. on Behalf of Community Credit Corp.*, 626 F.Supp. 1246 (D.Kan. 1986) (although the court would have had jurisdiction under the Tucker Act, the Contract Disputes Act divested the court of jurisdiction.); *Serra v. U.S. General Services Admin.*, 667 F.Supp. 1042 (S.D. N.Y.1987) (limited grant of jurisdiction to the district courts under the Tucker Act was withdrawn in 1978 by the Contract Disputes Act); *Management Science America, Inc. v. Pierce*, 598 F.Supp. 223 (N.D.Ga.1984), *aff'd*, 778 F.2d 792 (11th Cir.1985) (Contract Disputes Act "specifically abolishes the jurisdiction of the federal courts to hear claims 'founded upon any express or implied contract with the United States' which is the subject to the CDA"); Wright, Miller & Cooper, 14 *Federal Practice and Procedure* § 3657 (2d ed. 1985) ("the Contract Disputes Act of 1978 stripped the district courts of jurisdiction over actions arising out of express or implied executive agency contracts....")

■ The Act states that, unless provided otherwise, it covers:

> any express or implied contract ... entered into by an executive agency for—
>
> (1) the procurement of property, other than real property in being;
>
> (2) the procurement of services;
>
> (3) the procurement of construction, alteration, repair or maintenance of real property; or
>
> (4) the disposal of personal property.

41 U.S.C. § 602(a). By its own terms, the Act was not intended to apply to every government contract. *Coastal Corp. v. United States,* 713 F.2d 728, 730 (Fed.Cir. 1983).[2] In *Coastal Corp.* the Federal Circuit rejected the proposed gloss on 41 U.S.C. § 602(a) which would make the Act applicable not only to the particular kinds of contracts specified therein, but also to "other contracts tangentially connected with government procurement of goods and services." *Id.* Thus the Appellate Court refused to apply the Act to an implied contract to treat bids fairly stating that "Congress explicitly specified the types of contract that it intended the Act to cover." *Id.* Consequently, the initial question before this Court is whether the guaranties made by the United States and printed on each bill of lading is a contract which falls under the Act.[3]

By definition, a guaranty by the United States is not covered by the Act. A guaranty is defined as "a collateral agreement for performance of another undertaking. An undertaking or promise that is collateral to primary or principal obligation that binds guarantor to performance in event of nonperformance by the principal obligor."

Black's Law Dictionary (5th Ed.1979). *See General Overseas Films, Ltd. v. Robin Intern., Inc.,* 542 F.Supp. 684 (S.D.N.Y. 1982), *aff'd,* 718 F.2d 1085 (2nd Cir.1983) (a guaranty is "collateral to the debt itself."); *Financeamerica, Etc. v. Harvey E. Hall, Inc.,* Del.Super., 380 A.2d 1377, 1379 (1977) ("a contract of guaranty is the promise to answer for the payment of some debt or the performance of some obligation by another on the default of that third person who is liable in the first instance.");[4] *Cargill, Inc. v. Buis,* 543 F.2d 584, 587 (7th Cir.1976) (Indiana law defines a guaranty as "a collateral promise ... by one person to answer for the payment of some debt ... (in case of default) of another person liable therefore in the first instance."); *Roxbury State Bank v. The Clarendon,* 129 N.J.Super. 358, 324 A.2d 24, 33 (1974) ("a guaranty is an agreement to be answerable personally for the debt of another."). Consequently, the hallmarks of a guaranty are that it is collateral to the first obligation and it is different from the basic contract to which it is collateral.

Before this Court are the contracts between Jones Motor and Teledyne for the delivery of engine assemblies manifested by bills of lading. These are the principle contracts. The Government's guaranty contract for the payment of transportation charges is obviously collateral to each one. Whereas Teledyne contracted to procure the service of transporting goods from Jones Motor, the Government's guaranty contract is collateral to and *different* in substance from this principle contract. The Government's collateral obligation was a promise to perform in the event of Tele-

---

**2.** "The scope of the Act thus is limited to express or implied contracts for the procurement of services and property and for the disposal of personal property. It does not cover all government contracts." *Coastal Corp.,* 713 F.2d at 730.

**3.** There seems to be little if no dispute among the parties that if this claim were to fall under the Act, it would be covered by 41 U.S.C. § 602(a)(2)—a contract for services. There is no doubt that the transportation of the engine assemblies does not involve a "procurement of property", a "procurement of construction ... of real property" or the "disposal of personal property." 41 U.S.C. § 602(a)(1), (3) and (4).

In point of fact, the United States' brief only argues that the guaranty is a contract for the procurement of services. D.I. 24. Consequently, if the Government is to prevail, this Court must find that 41 U.S.C. § 602(a)(2) applies to the guaranty of payment made by the United States.

**4.** The court continued its explanation by pointing out that there are two different obligations. "The guaranty is a separate contract involving duties and responsibilities which are different from the basic contract to which it is collateral." *Financeamerica, Etc.,* 380 A.2d at 1379.

dyne's nonperformance of its obligation. The Army Tank Automotive Command did not enter into an express or implied contract with Jones Motor for the delivery of the tank engine assemblies. Rather, the Government promised to pay Jones Motor in the event that Teledyne failed to comply with its obligations imposed by the contract between it and Jones Motor. As such, this Court cannot consider the Government's guaranty contract as a contract for the procurement of services.[5] The guaranty contract may be collaterally related to a contract for the procurement of services but this is not enough to bring it under the Act. Furthermore, the Supreme Court has stated that the consignor (here the shipper, Teledyne) is originally liable for the carrier's charges unless noted otherwise on the bill of lading. *Southern Pac. Transp. Co. v. Commercial Metals*, 456 U.S. 336, 343, 102 S.Ct. 1815, 1820, 72 L.Ed.2d 114 (1982), citing *In re Bills of Lading*, 52 I.C.C. 671, 721 (1919). The Government's position here, however, would seem to contradict this proposition since it is asking this Court to find that the Government's guaranty on the bill of lading brings this action under the Act even though Teledyne and Jones Motor are the contracting parties and Teledyne is originally liable for the charges.

Secondly, case law analogous to the claim before this Court suggests that a guaranty contract is not covered by the Act. None of the parties has presented case law to the Court directly on point. Jones Motor, however has directed the Court's attention to two decisions holding that a construction-differential subsidy ("CDS") is not a contract covered by the Act. The Plaintiff contends that this Court should reach the same result when considering whether a guaranty contract falls under the Act.

In *Newport News Shipbuilding & Dry Dock v. U.S.*, the Court of Claims held that Congress did not intend to bring a CDS contract within the ambit of the Act. *Newport News Shipbuilding & Dry Dock v. U.S.*, 7 Cl.Ct. 549, 552 (1985). The issue before the court was whether it had jurisdiction to hear the plaintiff's contract claim. *Id.* at 550. If the plaintiff's claim was within the ambit of the Act, then the Court of Claims' direct access jurisdiction could be invoked. *Id.* If not, then the plaintiff failed to exhaust his administrative remedies before the Maritime Subsidy Board. *Id.* The court briefly explained that a CDS contract is the result of a program to subsidize American shipowners. *Id.* at 551–52. The Government provides an "operating-differential *subsidy*, a construction-differential *subsidy*, and a special *subsidy* to meet extraordinary aid to foreign shipping lines by their governments." *Id.* at 552 (emphasis in original). The shipyard is the direct applicant for the ship construction cost subsidy. *Id.* The Court of Claims explained that the CDS contracts were "more in the nature of subsidy/guarantee contracts" and as such not covered by the Act. *Id.* The court then cited a previous decision on this issue:

> [I]t is concluded from a reading of the Contract Disputes Act and its legislative history that it was not intended to reach this type of contract covering the payment of subsidy for construction of a vessel purchased by a private party for its own use. It is rather the conventional contract for the direct procurement of property, services, and construction, *to be used directly by the Government,* which is the type of Government contract covered by the Act.

*Id.* at 553, citing *Delta S.S. Lines, Inc. v. United States*, 3 Cl.Ct. 559, 569 (1983) (emphasis added). The Court of Claims also

---

5. The Government does suggest in its brief that the guaranty contract at issue is a "procurement-type, unilateral contract. The Government (the 'guarantor') arguably states to Jones (the 'creditor') that if Jones would deliver the tank parts to Prudential for ultimate delivery to the government of Turkey (the 'debtor'), the Government would guarantee the payment of Jones' fees." D.I. 24 at 2. This is unpersuasive.

The bill of lading (the contract) reveals that Jones Motor (the carrier) contracted with Teledyne (the shipper) to deliver the goods. At the most, the bills of lading are separate, derivative contracts of the Government's contract with Teledyne. Yet this still does not make them a contract for services entered into by the Government as required by the Act.

recognized that the Act was not intended to cover every contract. *Newport News Shipbuilding & Dry Dock,* 7 Cl.Ct. at 553.[6]

Although the aforementioned cases are not on all fours with the issue presented here, this Court finds them persuasive and supportive of its view of the guaranty contract. In *Newport News Shipbuilding & Dry Dock* it was important to the court that the CDS was not a contract for direct procurement of services, property or construction. Rather, the government was subsidizing the purchase price of the ship. In effect, the Government was the guarantor that the shipbuilder would get the full fair market value for the ship after the purchaser paid what he could. The fact that the shipbuilder constructed the ship for the purchaser and not for the Government further supports viewing the CDS this way. The Government was not directly procuring services or property. The same is true in the situation before this Court. The Government was not directly procuring the services of Jones Motor. On the contrary, Teledyne procured the requisite services. The Government's role in this situation was to assure Jones Motor that if it did not receive fair value for the services rendered the United States would fulfill the necessary obligations.

This Court finds, therefore, that it does have jurisdiction over Jones Motor's claim and Teledyne's cross-claim since they are both based upon the Government's guaranty contract. This Court agrees that the Act was not intended to apply to every government contract. The guaranty contract at issue here is not covered by the Act because it is not a contract for services. Rather, it is an agreement, collateral to the principle agreement to ship the goods, in which the Government promises Jones Motor that it will answer for Teledyne's failure to perform its obligation. Furthermore, this conclusion is supported by the situation addressed in *Newport News Shipbuilding & Dry Dock* which is analogous to the issue here. As such, the

Court of Claims' reasoning and conclusion persuades this Court that the guaranty contract in this suit is also not within the ambit of the Act. As to Teledyne's cross-claim, in particular, the Government has failed to show this Court how the guaranty language on the separate bills of ladings manifests a contract for the procurement of services between the Government and Teledyne. The Prime Contract, furthermore, provides for Teledyne to produce engine assemblies and to ship the goods in accordance with instructions given at a later date. Teledyne is not suing the Government for breach of this contract. Teledyne's claim is based upon the guaranty language provided by the Government at a later date. Thus, the Prime Contract's requirement that disputes arising thereunder be resolved in accordance with the Act is not applicable in this instance.

The Government's second argument in support of its motion for summary judgment is that this Court does not have jurisdiction under the Tucker Act. All the parties agree, and this Court recognizes, that a federal district court's jurisdiction under the Tucker Act for claims against the United States is limited to claims not exceeding $10,000. Jones Motor contends, and Teledyne obviously agrees, that each bill of lading is to be viewed as a separate cause of action for determining the amount in controversy. Viewed as such, the claims satisfy the jurisdictional maximum allowed for the amount in controversy regardless of whether the claims have been joined for litigation purposes. The Government, however, counters with two arguments. First, the United States suggests that this Court should not view this suit as involving 54 separate contracts; rather, the Court should view Jones Motor as splitting one claim. Secondly, the Government suggests that the Court should not permit Jones Motor to frame its cause of action against the United States for Tucker Act purposes as 54 claims for $1,150 and frame its cause of action against Teledyne as a claim in-

---

**6.** The court also took comfort, although without explanation, in the fact that the CDA excludes maritime contracts from its coverage. *Newport News Shipbuilding & Dry Dock,* 7 Cl.Ct. at 553.

The *Delta S.S. Lines, Inc.* court, however, did not mention this idea in its opinion, upon which the *Newport News Shipbuilding & Dry Dock* court relies.

volving $62,100 to satisfy the requirements for diversity jurisdiction.

The parties both acknowledge one case which is squarely on all fours to this question: *United States v. Louisville & Nashville Railroad Co.*, 221 F.2d 698 (6th Cir.1955). In *Louisville & Nashville Railroad Co.*, the Sixth Circuit was confronted with the question of whether the plaintiff presented 74 separate claims, each under the Tucker Act's $10,000 jurisdictional limit, or one claim which exceeded the jurisdictional requirement. The Sixth Circuit held that each of the 74 bills of lading constituted 74 separate contracts. *Louisville & Nashville Railroad Co.*, 221 F.2d at 702. The plaintiff, therefore, joined several causes of action and did not split his claim. *Id.* The appellate court then concluded that the district court had had jurisdiction over the plaintiff's claims under the Tucker Act since the plaintiff was allowed to join several claims if each claim separately met the $10,000 limitation. *Id.* at 703.

The Government contends that the holding in *Louisville & Nashville Railroad Co.* should not apply because of the different facts involved. The Government argues that the Sixth Circuit reached its conclusion because the shipments involved "items of different weights, moving between different points, having different routes and under different applicable rates." *Id.* at 701. This different evidence would be needed to support each claim arising from separate contracts. *Id.* at 702. The Government contends that the facts here are sufficiently distinguishable to find *Louisville & Nashville Railroad Co.* inapplicable. This case involves "identical transportation services to Teledyne on 54 different occasions, each at the same rate and each on identical bills of lading." D.I. 19. The Court is urged to conclude, therefore, that one contract is at issue, not several. *Id.*

The Government's position is not without merit. This Court, however, does not find it persuasive enough to obviate the general principle that a bill of lading is a contract. Even in this suit, the Court was not presented with sufficient evidence to conclude that different evidence will not be needed to support the different claims. If the defenses of nonperformance or incomplete performance are alleged, the Plaintiff may need to call different truck drivers and different warehouse persons to prove that each separate contract was performed. As such, the underlying rationale of *Louisville & Nashville Railroad Co.* may still be applicable. Furthermore, this Court is still confronted with the principle that a bill of lading is a contract between the shipper-consignor and the carrier. *See Southern Pac. Transp. Co. v. Commercial Metals*, 456 U.S. at 342, 102 S.Ct. at 1820 ("the bill of lading is the basic transportation contract between the shipper-consignor and the carrier, its terms and conditions bind the shipper and all connecting carriers."); *Maggard Truck Line, Inc. v. Deaton, Inc.*, 573 F.Supp. 1388, 1392 (N.D.Ga.1983), *aff'd in part*, 783 F.2d 203 (11th Cir.1986) ("Basically a bill of lading operates both as a receipt and as a contract." citing, *Louisville & Nashville R.R. Co.*, 221 F.2d at 701). Finally, none of the parties directed the Court's attention to any case law to support the Government's position in this particular situation. As a result, although the facts here do differ somewhat from those in *Louisville & Nashville R.R. Co.*, the Government's argument is not persuasive. Thus, this Court agrees with the Plaintiff that each bill of lading is a separate contract.

When a plaintiff has several Tucker Act claims and each one is under the jurisdictional ceiling, he may assert them in one action and the claims will not be aggregated for purposes of defeating jurisdiction. Wright, Miller & Cooper, 14 *Federal Practice and Procedure* § 3657 (2d ed. 1955); *Louisville & Nashville R.R.*, 221 F.2d at 703; *Zumerling v. Devine*, 769 F.2d 745, 748 (Fed.Cir.1985); *Baker v. United States*, 722 F.2d 517, 518 (9th Cir.1983); *Commonwealth of Pa. v. National Ass'n of Flood Ins.*, 520 F.2d 11, 25 (3rd Cir. 1975). Jones Motor has filed 54 separate claims based upon separate bills of lading and each claim is for $1,150. Although the aggregate value of Jones Motor's suit is $62,100, each claim separately falls within

the jurisdictional ceiling set by the Tucker Act.

The Government's final argument to defeat jurisdiction is predicated upon the fact that Jones Motor invokes diversity jurisdiction against Teledyne and Tucker Act jurisdiction against the United States. The Government contends that "Jones Motor should not be permitted to frame its cause of action inconsistently for purposes of meeting inconsistent jurisdictional requisites under different jurisdictional grants." D.I. 24 at 4.

■ It is generally well accepted that once a plaintiff properly joins claims [7] against a single defendant in a diversity action, he may aggregate the claims in order to satisfy the jurisdictional requirement that the amount in controversy exceed $10,000. *MGD Graphic Systems, Inc. v. A & A Bindery, Inc.*, 76 F.R.D. 66 (E.D.Pa.1977); 14A *Federal Practice and Procedure* § 3704; *see also*, 28 U.S.C. § 1332(a). In its complaint, Jones Motor states that it provided services to Teledyne in separate occasions "each at the same rate and each in a separate Bill of Lading...." D.I. 1. Even in its claim for damages, Jones Motor seeks "$62,100 ($1,150 × 54), plus interest." *Id.* Although each claim was not spelled out as a separate count, the complaint clearly asserts 54 separate claims against Teledyne based upon 54 separate bills of lading, yet joined together for purposes of this suit. As such, the law permits Jones Motor to aggregate its 54 separate claims to satisfy the $10,000 jurisdictional requirement for its claim against Teledyne.

■ The Government, however, sees this issue more as a question of allowing the Plaintiff to frame its cause of action inconsistently. The Court does not see it as such. The Plaintiff's individual claims against Teledyne are predicated upon 54 bills of lading—54 separate contracts. For diversity jurisdiction purposes, Jones Motor is allowed to aggregate these properly joined claims to satisfy the jurisdictional requirement. The Plaintiff's individual claims against the United States are predi-

cated upon the 54 separate guaranties appearing upon the 54 separate bills of lading. Under the Tucker Act, a district court's jurisdiction may not be defeated simply by aggregating the claims if each claim separately falls within the jurisdictional ceiling. The Plaintiff has not framed his causes of action inconsistently, both assert 54 claims, each for $1,150 and aggregating to $62,100. The Government, in point of fact, is actually taking issue with the fact that one statute allows the aggregation of claims and the other does not. This Court does not view this situation as reaching inconsistent results. Since the law under the two statutes under which Jones Motor gains jurisdiction are settled, this Court is reluctant to forge an exception based only upon these circumstances and no legal foundations. (The Government did not cite any law for its position on this issue.) As a consequence, this Court finds that the Plaintiff has not framed its causes of action inconsistently. Furthermore, this Court has jurisdiction over Teledyne and the United States based upon 28 U.S.C. § 1332 and the Tucker Act respectively.

For the foregoing reasons, this Court must deny the Government's motion for summary judgment.

---

**7.** Rule 18 of the Federal Rules of Civil Procedure allows a party asserting a claim for relief against a party to assert "as many claims ... as he has against an opposing party."