**In re Philip K. SCHNIPPEL, Debtor.**

**Philip K. SCHNIPPEL, Plaintiff,**

**v.**

**CITY OF PIQUA and Larry J. Huffman, Defendants.**

Bankruptcy No. 3–88–03837.
Adv. No. 3–90–0171.

United States Bankruptcy Court, S.D. Ohio, E.D.

Nov. 20, 1990.

785

L. Craig Hallows, Piqua, Ohio, for plaintiff.

Stephen E. Klein, Piqua, Ohio, for defendants.

## DECISION ON ORDER DENYING DEFENDANTS' MOTION TO DISMISS

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—matters concerning the administration of the estate, and (O)—other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship. The issues for decision are presented by the plaintiff's Complaint For Contempt For Violation Of Stay (Doc. 1) and the defendants' Motion To Dismiss Complaint For Contempt (Doc. 3).

## FACTS AND PROCEDURAL BACKGROUND

Philip K. Schnippel (Schnippel) owns 50% of the shares of PDQ Food Service, Inc. (PDQ). PDQ is an Ohio corporation doing business as Checkers Restaurant (Checkers) in Piqua, Ohio. Schnippel is employed by Checkers. PDQ is not in bankruptcy; however, Schnippel filed for relief under chapter 13 of the Bankruptcy Code on November 17, 1988. Prior to filing bankruptcy, Schnippel, in order to continue utility service to Checkers, entered into a guaranty agreement with the defendant, City of Piqua (attachment to Doc. 1).

The complaint alleges that on December 21, 1988, Larry J. Huffman (Huffman), manager of the Utilities Billing Office in Piqua, wrote Schnippel a letter informing him that, due to a foreclosure proceeding against his real estate, his guaranty no longer qualified as security for the utility account, and, therefore, another guarantor or other security had to be provided for Checkers' utility account (attachment to Doc. 1).

On April 4, 1989, Schnippel's attorney wrote a letter to Stephen Klein (Klein), Piqua's Director of Law, informing him that Schnippel currently met the existing criteria for a guarantor and that threats to terminate the guarantor status "without first obtaining relief from the Bankruptcy Court" were a "violation of the automatic stay provided by 11 U.S.C. Section 362" (attachment to Doc. 1).

On July 17, 1989, Piqua adopted a new ordinance, § 50.07(B), which set forth additional requirements to qualify as a guarantor, specifically that a "guarantor shall not have any petition pending in bankruptcy court" (attachment to Doc. 1). Subsequently, Klein wrote Schnippel's counsel informing him of the adoption of the ordinance, and demanding that a new guarantor be provided by November 1, 1989 (attachment to Doc. 1). In addition, Huffman sent a letter to Schnippel on December 13, 1989, informing him of the new ordinance, and demanding that he provide another guarantor for Checkers, a letter of credit, or a security deposit in the amount of $3,985 by December 29, 1989 (attachment to Doc. 1).

On July 23, 1990, a Complaint For Declaratory Judgment was filed by the City of Piqua in the Municipal Court of Miami County, Ohio (attachment Doc. 1). The complaint sought a determination of whether Schnippel was in compliance with § 50.07(B) of the Piqua Code. Section 50.-07(B), in relevant part, provides that in lieu of a security deposit, a customer may qualify to receive utility service if he provides a guarantor. The guarantor must own real estate in Miami County, Ohio, be a utility customer of Piqua, have an acceptable payment history for twelve months preceding application for utility service, and *not have any pending bankruptcy petition* (emphasis added) (attachment to Doc. 1). Schnippel did not provide any further security deposit.

The complaint further alleges that, despite actual knowledge of Schnippel's pending bankruptcy, the defendants, the City of Piqua and Huffman, have "by written and oral communications continued to harass the debtor" through demands that Schnippel provide another guarantor, letter of credit, or security deposit.

Responding to Schnippel's complaint, the City of Piqua filed a Motion To Dismiss Complaint For Contempt (Doc. 3), asserting that Schnippel failed to state a claim for which relief could be granted. The City of Piqua states that PDQ, doing business as Checkers, is not a debtor under Title 11 and that no actions have been initiated against any property of the debtor, Schnippel. The debtor filed a Memorandum Contra Motion To Dismiss Complaint For Contempt (Doc. 4).

## DISCUSSION

Pursuant to F.R.C.P. 12(b)(6), which is made applicable to this proceeding by Bankr.R. 7012(b), a motion to dismiss a complaint may be filed for "failure to state a claim upon which relief can be granted." A motion to dismiss is an attack upon the legal sufficiency of the complaint and the court is restricted to the pleadings. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983). The general rule is "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Davis H. Elliot Co., v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir.1975). Courts generally disfavor granting a motion to dismiss "[b]ecause dismissal of an action constitutes a judgment on the merits and is accorded preclusive effect." *Matter of Schwartzman*, 63 B.R. 348, 355 (Bankr.S.D.Ohio 1986). *See Matter of Sams*, 106 B.R. 485, 488 (Bankr.S.D. Ohio 1989).

Therefore, in determining whether Schnippel's complaint for violation of the stay should be dismissed for failure to state a claim, it is necessary to determine whether the plaintiff can establish a set of facts which would entitle him to relief.

11 U.S.C. § 1306 provides in relevant part that property of the estate includes all property specified in § 541, which is made applicable to chapter 13 cases by § 103(a). Pursuant to § 541(a), the commencement of a case under sections 301, 302, or 303 of title 11 creates an estate. Section 541(a)(1) defines what property is included in the estate, and provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" is property of the estate. The language of this section has been broadly construed. "Congress intended a broad range of property to be included in the estate." *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). "[A]ll kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act" is included within § 541(a)(1). 462 U.S. at 205 n. 9, 103 S.Ct. at 2313 n. 9 (quoting H.R.Rep. No. 95–595, p. 367; S.Rep. No. 95–989, p. 82 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6323). "The reorganization effort would have small chance of success ... if property essential to running the business were excluded from the estate." *Id.*, 103 S.Ct. at 2313.

The matter presently before the court involves a guaranty. A guaranty is recognized as a separate contract of the guarantor. It is "[a]n undertaking or promise that is collateral to [sic] primary or principal obligation that binds [sic] guarantor to performance in event of nonperformance by the principal obligor." *Jones Motor Co., Inc. v. Teledyne, Inc.*, 690 F.Supp. 310, 313 (D.Del.1988) (quoting BLACK'S LAW DICTIONARY (5th ed. 1979)). "[T]he hallmarks of a guaranty are that it is collateral to the first obligation and it is different from the basic contract to which it is collateral." *Id.* at 313.

In accordance with the expansive interpretation afforded § 541(a)(1), courts have held a variety of contractual relationships to be property of the estate. Pertinent to the resolution of the issues in this proceeding are those decisions which have recognized, that although a contract requires actual or potential payment by a debtor to a state or federal governing body, such a contract is property of the estate. The Sixth Circuit, in *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168 (6th Cir.1990), rejected the argument that a liquor license is a privilege granted by the state which does not give rise to property or contract rights, and held that such a license is property of the estate. Other contractual relationships held to be property of the estate include a debtor's authority to operate an intrastate trucking business, *Matter of Brown Transport Truckload, Inc.*, 118 B.R. 889 (Bankr.N.D.Ga.1990), a FCC radio frequency license, *Matter of Fugazy Exp., Inc.*, 114 B.R. 865 (Bankr.S.D.N.Y.1990), a Development of Regional Impact Order allowing the debtor to utilize county roads, *In re Beker Industries Corp.*, 57 B.R. 611 (Bankr.S.D.N.Y.1986), dormant state agency issued certificates of public convenience and necessity, *In re Rocky Mountain Trucking Co., Inc.*, 47 B.R. 1020 (D.Colo.1985), and building permits, *In re Island Club Marina, Ltd.*, 38 B.R. 847 (Bankr.N.D.Ill.1984).

Contracts in which the debtor is not a party in privity to a contract, but is only a beneficiary, have been held to be property of the estate. The Second Circuit recognized this principle in *MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89 (2nd Cir.1988), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). In *Johns–Manville*, the distributor argued that its interest in vendor endorsements was a contractual right solely between it and the non-debtor insurance companies, and therefore, did not constitute property of the estate. Disagreeing with the distributor's argument, the court held that any rights which a distributor possessed, pursuant to vendor endorsements contained within the debtor's insurance policies, were derivative and inseparable from the debtor's rights, and thus constituted property of the estate. Similarly, in *In re Titan Energy, Inc.*, 837 F.2d 325 (8th Cir.1988), the court, in accord with developed doctrines construing § 541, held that third-party liability policies which indemnified the debtor for all

788

losses it might incur, were property of the estate. Although the policy proceeds would not go directly to the estate, the *Titan* court noted that the proceeds would serve to reduce claims and increase the amount of estate assets to be distributed. *Id.* at 329.

Consistent with the authority construing 11 U.S.C. § 541, this court finds that the agreement signed by Schnippel with the City of Piqua is property of the estate. Pursuant to this guaranty contract, Schnippel obtained the right to have utility service continued to Checkers Restaurant. Checkers provides Schnippel with his sole source of income. This income is necessary to complete payment of Schnippel's confirmed plan. Although this guaranty agreement may require payment from the debtor (§ 1305), it is, in this particular chapter 13 case, a valuable asset constituting property of the debtor's estate.

Having determined that the guaranty agreement is property of the estate, the automatic stay is applicable. 11 U.S.C. § 362 provides that the filing of a bankruptcy petition automatically stays:

(a) . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

*See In re Homan,* 116 B.R. 595 (Bankr.S.D. Ohio 1990); *Matter of Dexter,* 116 B.R. 92 (Bankr.S.D.Ohio 1980).

The complaint, having alleged sufficient facts to state a claim upon which relief can be granted, the defendants' Motion To Dismiss (Doc. 3) for failure to state a claim is DENIED. The defendants shall file their answers not later than fourteen (14) days following the date of this decision.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.