**Richard H. COFFEY, Plaintiff,**

v.

**UNITED STATES of America on Behalf of COMMODITY CREDIT CORPORATION, Defendant.**

No. 84–1169.

United States District Court, D. Kansas.

Jan. 29, 1986.

Kathleen M. Boelte, Boelte & Boelte, Sublette, Kan., for plaintiff.

Benjamin L. Burgess, Jr., U.S. Atty., Sharon A. Werner, Asst. U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted. The cause of action arises from a grain sale in which plaintiff transferred milo to defendant in exchange for the discharge of a farm loan held by defendant.

Plaintiff alleges that defendant offered a Payment-in-Kind (PIK) program "to encourage the redemption of outstanding corn, sorghum, and wheat loans." (Amended Complaint, Exh. 1). As to the procedures, plaintiff alleges defendant calculated and inserted the total bushels (23,360) on the bid sheet, and then plaintiff inserted his bid of 12%, the amount he would retain for personal use or marketing. (Amended Complaint, Exh. 2). By letter dated May 2, 1983, defendant informed plaintiff that his bid of 12% had been accepted. (Amended Complaint, Exh. 3). On May 10, 1983, defendant mailed a Commodity Delivery Notice to plaintiff requiring delivery of 25,256 bushels of milo, which exceeds the bushels he had bid. (Amended Complaint, ¶ 7). The Grant County ASCS office explained in a letter dated May 18, 1983, that it had "corrected" plaintiff's bid to 28,700 bushel from 23,360 bushel to reflect the entire quantity of grain not required for plaintiff's participation in other PIK programs. (Amended Complaint, Exh. 4).

Plaintiff further alleges his full performance of the contract by the delivery of the milo under the terms of his bid. Plaintiff has demanded defendant to "release all remaining milo which was not required to be retained under loan and ... [to] retire his loan." (Amended Complaint, ¶ 8).

Plaintiff filed his original complaint March 28, 1984, asserting jurisdiction of this court under 15 U.S.C. § 714b and seeking relief through a declaratory judgment on the contractual rights of the parties, a judgment of specific performance against defendant, and a finding of conversion with actual damages of $16,447.20, consequential damages of $14,690, and punitive damages.

After defendant filed a motion to dismiss, plaintiff amended his complaint to reflect this court's jurisdiction under 28 U.S.C. § 1346(b), alternatively under 28 U.S.C. § 1346(a)(2). Plaintiff now seeks relief for conversion in the amount of $16,447.20 actual damages and $14,690 consequential damages, and for breach of contract in the amount of $9,999 damages.

While defendant advances numerous arguments, the court will restrict its attention to whether plaintiff's conversion claim sounds in contract and whether the Contract Disputes Act of 1978 is applicable.

■ It is a long-standing rule that the United States may not be sued without its consent. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983); *Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818, 823 (10th Cir.1981). The consent of the United States is a prerequisite to this court's jurisdiction. *Mitchell*, 463 U.S. at 212, 103 S.Ct. at 2965; *Hefley v. Textron*, 713 F.2d 1487, 1494 (10th Cir.1983). Because the jurisdiction of federal courts is limited to that provided by the Constitution or statute, there is a presumption against federal jurisdiction which must be affirmatively over-

come by the party invoking jurisdiction. *Karlin v. Clayton,* 506 F.Supp. 642, 644 (D.Kan.1981).

The federal statute permitting suits against the Commodity Credit Corporation (CCC) is 15 U.S.C. § 714b which places exclusive jurisdiction in United States district courts. 15 U.S.C. § 714b also provides:

Any suit by or against the United States as the real party in interest based upon any claim by or against the Corporation shall be subject to the provisions of subsection (c) of this section to the same extent as though such suit were by or against the Corporation, except that (1) any such suit against the United States based upon any claim of the type enumerated in section 1491 of Title 28, may be brought in the United States Claims Court, and (2) no such suit against the United States may be brought in a district court unless such suit might, without regard to the provisions of sections 714 to 714p of this title, be brought in such court.

If plaintiff's suit is against the United States as the real party in interest, then other significant jurisdiction provisions will come into play.

 The United States is the real party in interest in actions where recovery would come from the federal treasury. *Anderson v. Occidental Life Ins. Co. of California,* 727 F.2d 855, 856 (9th Cir. 1984); *see Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). Plaintiff Coffey seeks monetary damages from the CCC, an agency and instrumentality of the United States within the Department of Agriculture. 15 U.S.C. § 714. The financial operation of the CCC is dependent upon the federal treasury. *See* 15 U.S.C. §§ 713a–4, 713a–12. The court concludes plaintiff's claim is against the United States, the real party in interest. *See Raines v. Block,* 599 F.Supp. 196, 198 (D.Colo.1984).

 It is now a question of whether plaintiff's suit could be brought in district court without regard to 15 U.S.C. §§ 714 to

714p. Plaintiff alleges jurisdiction pursuant to 28 U.S.C. § 1346(b), alternatively 28 U.S.C. § 1346(a)(2). Plaintiff seeks under § 1346(b) money damages for the alleged wrongful conduct of CCC's agents in altering his bid and thereby converting his milo. The court finds merit in the defendant's argument that plaintiff's action sounds in contract and not tort.

Plaintiff's allegations of wrongful conduct are limited to: "Defendant CCC altered his bid in violation of the terms and conditions of the program," and "Defendant refused to comply with the contract, and refused to release that portion of the collateral in dispute, thereby converting Plaintiff's grain." (Amended Complaint, ¶¶ 7, 8).

Plaintiff concedes an "act or omission" of a government employee or agent "in the execution of a statute or regulation" is not actionable under the Federal Tort Claims Act (FTCA). 28 U.S.C. 2680(a). Nevertheless, plaintiff insists the government has converted 4,699.2 bushels of his grain by retaining it after he delivered, under protest, 25,256 bushels pursuant to the delivery notice which exceeded his bid of 20,-556.80 bushels. (Memorandum in Opposition, p. 4). The strained nature of this argument suggests plaintiff's action rests in contract law.

Even though, as plaintiff notes, a breach of contract action and tort action can co-exist, it is settled that claims essentially based upon an alleged failure to carry out contractual duties are not tort claims which confer jurisdiction under the FTCA. *Tannenbaum v. Envirodyne Engineers, Inc.,* 609 F.Supp. 931, 933 (D.Ill.1985), *see Blanchard v. St. Paul Fire and Marine Insurance Co.,* 341 F.2d 351, 357 (5th Cir.) *cert. denied* 382 U.S. 829, 86 S.Ct. 66, 15 L.Ed.2d 73 (1965). Jurisdiction of this court cannot be invoked by framing the complaint as other than contractual, when in fact "the genesis of any wrongdoing by the United States was breach of contract." *Raines v. Block,* 599 F.Supp. at 199; *see Management Science America, Inc. v. Pierce,* 598 F.Supp. 223, 225 (N.D.Ga.1984).

The court in *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C.Cir.1982), stated: "The classification of a particular action as one which is or is not 'of its essence' a contract action depends both on the source of the rights upon which plaintiff bases its claims, and upon the type of relief sought (or appropriate)."

Plaintiff brought this action to obtain the CCC's performance under the contract, as he understands the terms, and to receive consequential damages arising from CCC's alleged breach of the same contract. Plaintiff's rights spring from the contract. In such an action, the crucial question is whether the United States had the authority unilaterally to change the terms of the agreement. Because plaintiff's claim of conversion is essentially a claim for breach of contract, the court finds it lacks jurisdiction under 28 U.S.C. § 1346(b) and the FTCA. *See Raines v. Block*, 599 F.Supp. at 199.

Plaintiff alternatively alleges this court has jurisdiction under the Tucker Act, 28 U.S.C. § 1346(a)(2), which provides in relevant part:

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

. . . .

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either ... or upon any express or implied contract with the United States, ... except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States ... which are subject to sections 8(b)(1) and 10(a)(1) of the Contract Disputes Act of 1978.

Acknowledging this court's jurisdiction under the Tucker Act is limited to claims not exceeding $10,000, plaintiff has limited his alternative contract claim to $9,999. The waiver of damages in excess of $10,000 is sufficient to permit a district court to exercise its concurrent jurisdiction under the Tucker Act. *Professional Managers' Ass'n v. U.S.*, 761 F.2d 740, 742 (D.C.Cir. 1985). The only remaining hurdle to this court's jurisdiction of plaintiff's claim is whether the contract in question is subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 601 *et. seq.*

■ The scope of the CDA is set forth at 41 U.S.C. § 602(a) as "any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of Title 28) entered into by an executive agency for—

(1) the procurement of property, other than real property in being;

(2) the procurement of services;

(3) the procurement of construction, alteration, repair or maintenance of real property; or,

(4) the disposal of personal property."

The government contends its contract for acquisition of plaintiff's milo is a contract for the procurement of property covered by the express terms of the CDA. Plaintiff has not directly addressed this contention.

The CDA does not cover all government contracts. *Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed.Cir.1983). (An implied contract to give bids fair consideration is not within CDA). On the other hand, the CCC is an executive agency which entered into an express contract with plaintiff. *See* 15 U.S.C. § 714; 31 U.S.C. § 9101(3)(A). Under the terms of the contract, the CCC acquired grain from plaintiff. Procurement is usually defined as to get possession of, obtain, or acquire. Webster's Third New International Dictionary (Unabridged) p. 1809 (1981). From this overview, the contract at issue appears to be within the CDA, but further analysis is necessary.

The CDA was intended to create a comprehensive statutory scheme of legal and administrative remedies to resolve government contract claims. Formerly, the government contract remedies system was a hodgepodge of rules and requirements varying with the whims of the agencies.

Pursuing alternative forums—agency boards and courts—also generated restrictive and uncoordinated provisions and procedures. S.Rep. No. 1118, 95th Cong., 2d Sess. 1, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5235. In order to achieve the unification of diverse and inconsistent procedures, the CDA was given broad application. S.Rep. No. 1118, 95th Cong., 2d Sess. 17–18, *reprinted in* U.S.Code Cong. & Ad. News 5251–5252.

Under the CDA, contract disputes are reviewed in either of two methods: (1) appeal of a contracting officer's decision to the Board of Contract Appeals (41 U.S.C. §§ 606 and 607) or (2) direct relief from the Claims Court. (41 U.S.C. § 609). *Sealtite Corp. v. General Services Admin.*, 614 F.Supp. 352, 354 (D.Colo.1985).

The CDA has been interpreted as eliminating a district court's concurrent jurisdiction over government contract claims. *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1486 (9th Cir.1985) appeal pending — U.S. ——, 106 S.Ct. 265, 88 L.Ed.2d 271. [The court treated the CDA proviso in 28 U.S.C. § 1346(a)(2) as restricting the jurisdiction granted in the first part of 1346(a)(2).] *See also North Side Lumber*, 753 F.2d at 1487 (Boochever, J., dissenting). In *S.J. Groves & Sons Co. v. United States*, 495 F.Supp. 201, 207 n. 7 (D.Colo. 1980), the court noted that Congress intended the CDA to eliminate district court jurisdiction of government contract claims because the Claims Court has the greater expertise on these matters.

Research has not revealed precedent on whether a contract similar to the one at issue is within the scope of the CDA. In *Hester v. Farmer's Home Admin.*, 49 B.R. 593 (E.D.Mo.1985), the FmHA entered subordination agreements in consideration for the bank's agreement to make additional loans to meet debtor's annual operating expenses. Defendant Government argued the subordination agreements were for the procurement of services benefitting the FmHA and, therefore, were within the CDA. The district court did not accept this argument, stating:

To place this transaction within the confines of 41 U.S.C. § 602 would strain the language of the statute. The statute clearly relates to a contract by an executive agency for the procurement of services. The loans herein were between plaintiffs and defendant to implement a national policy related to farming. The fact that defendant later subordinated the agreement to certain private financial institutions does not transform the contract into ones for which the government is procuring services. Therefore, the Court finds that 41 U.S.C. § 602 does not work to divest it of jurisdiction.

*Id.* at 598. The court believes the *Hester* decision is distinguishable and not convincing authority.

By the express wording of 41 U.S.C. § 602(a), the question of scope of the CDA is judged from the standpoint of the executive agency both as to the purpose or purposes for entering into the contract, as well as the results obtained in its performance. While the plaintiff's agreement to deliver the grain was in consideration of the government's retirement of a farm loan, the government's expressed purpose for entering into this transaction was to acquire a sufficient supply of grain to meet expected PIK demands. (Amended Complaint, Exh. 1). The government's manner of payment, whether by cash or by the discounting of a note, does not change the primary purpose of the contract—the procurement of grain. To transcend the actual transaction in favor of some national policy would force this court to ignore the broad wording of the CDA and to assume the inappropriate role of policymaker.

For the CDA to achieve the goal of unification, it must be consistently applied. Where the accepted definition of key operative terms are satisfied, the CDA should be applicable. The court finds the contract involved is subject to the CDA, with exclusive jurisdiction in the Claims Court.

The court is empowered to transfer a civil action where there is a want of jurisdiction and it is in the interest of justice. 28 U.S.C. § 1631.

IT IS THEREFORE ORDERED that this court lacking subject matter jurisdiction transfers the case to the United States Claims Court.