MIDLAND NATIONAL
BANK, Plaintiff,

v.

Walter R. CONLOGUE, and American Aircraft, Inc., Intervening Plaintiffs,

v.

PURITAN INSURANCE COMPANY, Defendant and Third Party Plaintiff,

v.

UNITED STATES of America, Third Party Defendant.

No. 83–1707–K.

United States District Court,
D. Kansas.

Aug. 4, 1989.

David C. Burns, Newton, Kan., for plaintiff.

F.C. McMaster, McMaster & McMaster, Wichita, Kan., Priscilla Budeiri, Trial Lawyers for Public Justice, Washington, D.C., and Ted M. Warshafsky, Warshafsky, Rotter, Tarnoff, Gesler, Reinhardt & Bloch, Milwaukee, Wis., and Andrew Hutton, Michaud & Hutton, Wichita, Kan., Gene E. Schroer, Schroer, Rice, P.A., Topeka, Kan., for intervening plaintiffs.

James J. McGannon, Regan & McGannon, Wichita, Kan., for defendant and third party plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for third party defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

The factual background of the case has been discussed on two previous occasions by this court. *Midland National Bank v. Conlogue*, No. 83–1707–K (D. Kan. Mar. 22, 1989) (1989 WL 31439), and slip op. (D. Kan. July 29, 1986). The relevant facts may be briefly recounted here.

The intervening plaintiff, American Aircraft, Inc., was the owner of a Beechcraft King Air 90 airplane. Conlogue was the chief executive officer of American. In December, 1982, Conlogue was contacted by Ormie Blanton, an agent of the United States Customs Service. Blanton told Conlogue that the Customs Service needed the airplane for special undercover work. The plane would be flown only by a qualified pilot, and would be returned within a week or two. Conlogue was also cautioned not to disclose the government's involvement to anyone, since a leak could result in the deaths of investigating agents.

Conlogue leased the airplane to Frank Raia, whom Blanton introduced as another customs agent, on December 21, 1982. On January 3, 1983, the airplane was crash-landed in the sea off Grand Cayman Island. No customs agents were aboard the airplane. The pilot of the airplane and a passenger were charged by the local police with illegal possession and importation of marijuana. The airplane was a total loss.

The plaintiff, Midland National Bank, held a security interest in the airplane. The defendant/third party plaintiff, Puritan Insurance Company, is the insurer of the airplane. Conlogue, Midland, and Puritan each present claims against the United States arising from the destruction of the airplane. This court has previously found Blanton to be immune from suit.

The United States has now moved to dismiss the claims against it, contending both that it is immune and that the court is without jurisdiction. Although the United States presents additional arguments which also will be addressed, it founds its present motion on two main arguments. First, it argues that the claims against it involve tort claims arising from misrepresentation, for which it retains immunity under 28 U.S.C. § 2680(h). Second, it argues that the claims are essentially contractual in nature, and that the court is therefore without jurisdiction to address the claims under 28 U.S.C. § 1346(a)(2).

Under 28 U.S.C. § 1346(b), the United States District Courts possess jurisdiction over civil actions arising from "the negligent or wrongful act or omission of any employee of the Government, while acting within the scope of his office or employment...." The potential liability underlying this jurisdiction is established by the waiver of immunity contained in the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq*. The Tort Claims Act provides that the government

shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674.

However, the waiver of immunity under the Act is limited by specific exceptions listed in 28 U.S.C. § 2680. Subsection (h) of this section provides that the Act shall not apply to

Any claim arising out of assault, battery, false imprisonment, false arrest, mali-

cious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights....

The United States has now moved to dismiss the claims against it, contending that the claims arise out of alleged misrepresentations and are therefore barred through the operation of § 2680(h). In its brief, the United States correctly notes that misrepresentation under subsection (h) includes both intentional and negligent misrepresentation. *United States v. Neustadt*, 366 U.S. 696, 702, 81 S.Ct. 1294, 1298, 6 L.Ed.2d 614 (1961). To the extent that claims contained in the complaints filed against the United States in the present case represent actions for misrepresentation, whether intentional or negligent, the United States has retained its immunity, and those claims must be dismissed. However, the other claims contained in the complaints, to the extent that they represent tort claims separate from any governmental misrepresentations, must be retained.

In *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), the Court concluded that subsection (h) did not apply where the government has violated a duty of due care separate from any alleged misrepresentations. As in *Neustadt*, the plaintiff was a homeowner dissatisfied with the quality of the house constructed for him through the assistance of a federal agency. In *Neustadt*, the plaintiff had sued the agency, contending it had negligently inspected and appraised the house, and that he had been injured when he justifiably relied on the appraisal in purchasing the house. In *Block*, the plaintiff argued that the government agency, under the circumstances of the case, had violated a Good Samaritan duty to supervise the construction of the house.

The Court in *Block* held that the plaintiff's claims were not barred by Subsection (h). This provision provides protection for the government where the claim is grounded in misrepresentation, the essence of which, "whether negligent or intentional, is the communication of misinformation on which the recipient relies." 460 U.S. at 296, 103 S.Ct. at 1093. The Court conclud-

ed, however, that subsection (h) "does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Id.*, at 297, 103 S.Ct. at 1093. The Court then held that the plaintiff's assertion of a Good Samaritan undertaking to supervise the construction of the house provided such an independent duty.

Nor was a different result compelled by the presence in the case of governmental misstatements which, in the absence of subsection (h), might have supported a claim for negligent misrepresentation in addition to the negligent supervision claim.

> But the partial overlap between these two tort actions does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well. Neither the language nor history of the Act suggests that when one aspect of the Governments's conduct is not actionable under the "misrepresentation" exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the Government's conduct.

460 U.S. at 298, 103 S.Ct. at 1094.

In this court's memorandum order of March 22, 1989, it noted the possible application of *Leaf v. United States*, 661 F.2d 740 (9th Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982). Upon review, it is clear that *Leaf* provides no bar to the maintenance of the negligence claims against the United States in the present case. In *Leaf*, a DEA informant had leased an airplane from the plaintiffs with the approval of supervising DEA agents. The informant told the plaintiffs "a totally false story that the plane was to be used by a rock music group for recreational purposes, [and] never told the plaintiffs of its true intended use...." 661 F.2d at 741. When the airplane was destroyed during a drug smuggling operation, the plaintiffs brought an action against the United States for the value of the airplane.

The Ninth Circuit held that the plaintiffs' claim was barred by the "misrepresenta-

tion" provision contained in 28 U.S.C. § 2680(h), even though the plaintiffs had couched their claim in the language of negligence. The court found that a claim for misrepresentation lay "at the heart of plaintiffs' complaint, however deftly they have attempted to avoid using the word." *Id.*, at 742.

Unlike the present case, the allegations of negligence in *Leaf* were directed solely at the failure to use due care in conveying accurate information to the plaintiffs in arranging for the lease of the airplane. The reported facts of the case fail to indicate any allegations by the plaintiffs of governmental negligence in the care and handling of the aircraft after the lease was signed. *Leaf* simply stands for the proposition recognized earlier in *Neustadt* that "misrepresentation" under § 2680(h) includes both the intentional and negligent varieties of the beast. To the extent that *Leaf* would suggest that a negligence action cannot be maintained where a misrepresentation by the government is also present, it is inconsistent with *Block* and retains no authority.

The "misrepresentation exception" of 28 U.S.C. § 2680(h) has no application where the plaintiff is "pursuing a distinct claim arising out of other aspects of the Government's conduct." *Block*, 460 U.S. at 298, 103 S.Ct. at 1094. When the government violates a duty of care independent of its obligation to avoid conveying false information, it may incur liability under the Tort Claims Act. *See Sowell v. United States*, 835 F.2d 1133, 1135 (5th Cir.1988); *Keir v. United States*, 853 F.2d 398, 411 (6th Cir. 1988). The plaintiff's action is barred only if the government's misrepresentation is "essential" to that action. *See Metz v. United States*, 788 F.2d 1528, 1534–36 (11th Cir.), *cert. denied*, 479 U.S. 930, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986) (holding claims for intentional infliction of emotional distress, false light, and intrusion into seclusion were not independent of the alleged underlying misrepresentation). If the plaintiff is unable to identify a duty of the government independent of the duty to avoid misrepresentation of material information, the plaintiff's action is barred un-

der § 2680(h). *See Williamson v. United States Dept. of Agriculture*, 815 F.2d 368, 377–378 (5th Cir.1987).

In the present case, such an independent duty exists. The government was obliged to use ordinary or reasonable care in the use and maintenance of the airplane in its possession. *See, e.g., M. Bruenger & Co. v. Dodge City Truck Stop, Inc.*, 234 Kan. 682, 675 P.2d 864 (1984); *Global Tank Trailer Sales v. Textilana–Nease, Inc.*, 209 Kan. 314, 496 P.2d 1292 (1972); *Moore v. Cass*, 10 Kan. 288 (1872). Thus, the bailee of an airplane has a duty of due care to operate the airplane according to "proper flying methods and not in a way that [is] decidedly dangerous." *Pottawatomie Airport and Flying Service v. Winger*, 176 Kan. 445, 449, 271 P.2d 754 (1954). This duty exists as well in the present case, whether or not the government originally obtained the King Air 90 through fair means or foul.

In its brief, the United States cites only those portions of the claims made against it that assert misrepresentation by the government. But the plaintiff, intervening plaintiffs, and third party plaintiff have asserted claims against the United States for misconduct separate and independent of the government's original communications with Conlogue. These claims involve the failure of the United States to exercise due care in the use and maintenance of the airplane once it was in the possession of the United States.

The first amended complaint filed by intervening plaintiffs Conlogue and American on December 24, 1985 contains a claim for negligence as well as misrepresentation by the United States. Paragraph 8 of the third party complaint filed by Puritan on July 3, 1985 alleges that the United States "negligently caused said aircraft to be crash-landed at sea." Midland's amended complaint of July 3, 1985 alleges the United States "negligently used and entrusted said aircraft to the damage of the plaintiffs." (Amended Complaint, Count II, ¶ 4.) In a subsequent complaint filed on September 23, 1986, Midland alleges in ¶ 4 that the

United States converted its interest in the airplane by

using said aircraft through a bailment lease, negligently allowing said aircraft to be flown to the point of fuel exhaustion; in allowing said aircraft to be operated by an unqualified pilot; in failing to return the aircraft in the same condition as leased; in failing to land the aircraft at a proper landing site; and in failing to protect the aircraft. . . .

Two cases have explicitly discussed the tort liability of the United States as it relates to the damage of bailed property. In *New England Helicopter Service v. United States*, 132 F.Supp. 938 (D.R.I.1955), the plaintiff and an agency of the federal government had entered into a contract for the rental of a helicopter. The plaintiff's complaint alleged that a government employee had negligently operated the helicopter, causing it to crash. The plaintiff sought damages in the amount of $15,000.00. The government sought to dismiss the case, arguing that the court was without jurisdiction to hear the plaintiff's claim under 28 U.S.C. § 1346(a)(2), which limits the jurisdiction of district courts in claims not sounding in tort to those claims in which the amount in controversy does not exceed $10,000.00.

The court found that the plaintiff was entitled to pursue the matter in an action sounding either in contract or in tort:

It is the general rule that where a bailee for mutual benefit fails to exercise proper care of the property bailed and it is damaged thereby, the bailor may sue him in assumpsit or in an action on the case. The bailor has this election of remedies because the bailee's violation of the duty imposed upon him by the bailment is not only a breach of his contract but also a tort.

132 F.Supp. at 939 (citations omitted). The court concluded that although the plaintiff-bailor may possess a contract claim under 28 U.S.C. § 1346, there was no authority indicating that such a claim was the exclusive remedy available. *Id.*

The court also found that none of the specific exceptions to tort liability enumerated in 28 U.S.C. § 2680 were applicable, stating that

there is nothing in § 2680 which indicates a congressional purpose to except from the authorization to sue claims for damages caused by the negligent act of an employee of the Government while acting within the scope of his employment simply because said negligent act is also a breach of a contract of the United States.

*Id.*

In *Jaeger v. United States*, 394 F.2d 944, 947 (D.C.Cir.1968), the plaintiff brought an action under the Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, for the value of an overcoat and gloves left in a cloakroom at the officer's mess at Fort Meade. The plaintiff contended that a bailment had been created by his deposit of the property in the cloakroom, and that the property had been lost through the negligence of the government. The District of Columbia Court of Appeals affirmed the district court's grant of summary judgment.

The Court of Appeals first recognized that under common law a bailee might sue under either tort or contract. It also assumed that under state law a cause of action might arise from the bailee's failure to redeliver the bailed property. But the court held that this alone was insufficient to create a valid action under the Tort Claims Act, which "has a 'tort' orientation that cannot fairly be extended to an act or omission that is 'wrongful' only in the sense that it violates a duty defined by contract." 394 F.2d at 947. Thus, the court held that plaintiff's claim, which arose solely from the presumption of negligence arising from the failure to redeliver bailed property, could not be maintained under the Tort Claims Act. However, the court also indicated that the result might be different if a claimant presented independent evidence of negligence. Citing *New England Helicopter*, the court stated that "[o]f course, negligent handling of another's property may be a tort, and an action based thereon is maintainable under the Federal Tort Claims Act." *Id.*, at 947 and n. 16.

Taken together, the principles reflected in these two decisions require the rejection of the argument advanced by the United States. Under *Jaeger*, if the claimant provides no independent evidence of negligence and rests solely on the presumption of negligence arising from the failure to redeliver the bailed property, the action does not fall within the scope of the Tort Claims Act. Here, however, the plaintiff, intervening plaintiffs, and third party plaintiff have not relied on a mere presumption of negligence. Rather, they make affirmative allegations of negligence in the government's actions during its care and custody of the airplane. Under these circumstances, the considerations discussed in *New England Helicopter* apply, and the United States's argument based upon 28 U.S.C. § 2680(h) must be rejected.

■ The United States also argues that the present action must be dismissed since it sounds in contract and seeks recovery of more than $10,000.00. Under 28 U.S.C. § 1346(a)(2), the district courts are given jurisdiction only over those contract actions which do not exceed $10,000.00 in amount. In the present case, the plaintiff, the intervening plaintiffs, and the third party plaintiff each seek the recovery against the United States of amounts substantially in excess of $10,000.00.

In an earlier order in the present case, this court stated: "In summary, the court finds the instant cause to be a breach of contract action." *Midland National Bank v. Conlogue*, No. 83–1707–K, slip op. at 13, (D.Kan. Mar. 22, 1989) (1989 WL 31439). The United States relies on this statement to support its contention that the present action sounds solely in contract and cannot be maintained in a district court.

In its March 22, 1989 order, the court was not presented with the present issue—whether the claims against the government sound solely in contract, or whether they may sound both in contract and tort. Instead, the court was presented with the separate issue of whether the claims against the government could include an action alleging a constitutional tort. The intervening plaintiffs sought to amend their first complaint to include a count alleging that the government's actions constituted a constitutional tort in depriving them of due process and preventing them from gaining redress for their grievances.

The court rejected the motion to amend, finding that the government's actions did not rise to the level of misconduct traditionally considered to constitute a constitutional tort. It was not presented with, and did not resolve, the question of whether the claims against the government sounded exclusively in contract. While the claims against the government include claims contractual in nature, they present in addition claims for ordinary negligence to which this court may give attention.

The presence of additional contractual remedies does not bar a bailor from pursuing a negligence action under the Tort Claims Act. As noted earlier, the court in *New England Helicopter* concluded that none of the provisions contained in 28 U.S.C. § 2680 barred the plaintiff's action for the destruction of its aircraft. In addition, the court expressly concluded that the presence of alternative contract remedies did not affect the ability of the plaintiff to proceed with its negligence action. No authority exists, the court concluded, which would make a contract action "the exclusive remedy of the bailor." 132 F.Supp. at 939.

"The fact that the claimant and the United States were in a contractual relationship does not convert a otherwise tortious claim into one in contract." *Aleutco Corp. v. United States*, 244 F.2d 674, 678 (3d Cir. 1957). In *Aleutco*, the plaintiff purchased government surplus war materials located in the Aleutian Islands. The plaintiff removed some of the property and was granted an indefinite extension of time to remove the remainder of the property. Subsequently, however, the government shipped the remainder of the property to California and sold it to a Chicago firm. The plaintiff sued the United States for conversion, and the district court's verdict in its favor was affirmed by the Third Circuit.

The *Aleutco* court found that the plaintiff's complaint stated a cause of action in tort for conversion, but "could have equally well made out a complaint for breach of contract." 244 F.2d at 679. The court held that the presence of the tort action was sufficient to establish potential liability under the Tort Claims Act. That a contract action also might have been brought did not require "that the forum of the district court be denied a plaintiff who pleads and proves a classic case in tort." *Id.*

Governmental tort immunity remains in effect, however, if the cause of action is a "tort" in name only, and is "based entirely upon breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim." *Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir.1963). In *Woodbury*, the court held that an action against the government by a land developer for breach of a fiduciary duty was not a tort action falling within the scope of the Tort Claims Act.

The Ninth Circuit upheld a tort action in *Martin v. United States*, 649 F.2d 701, 705 (9th Cir.1981), where the plaintiff was injured by the failure of the Veterans Administration to make proper plumbing repairs in a house sold by the VA. The court held that the district court had properly allowed the plaintiff's tort action to proceed.

> It would be improper to limit the plaintiff to a purely contract remedy. The cases that require such a limitation involve breaches in commercial relationships leading to loss of profit or other purely economic harm.

649 F.2d at 705 (citations omitted).

The Third Circuit adopted a similar approach in *Petersburg Borough v. United States*, 839 F.2d 161 (3d Cir.1988). In *Petersburg*, the plaintiff borough brought an action under the Tort Claims Act against the United States, alleging that the Farmer's Home Administration had misplaced its application for sewage treatment financing. The plaintiff contended that as a result, it was compelled to maintain interim construction financing which resulted in a loss to the plaintiff of over $50,000.00. The court affirmed the district court's dismissal of the plaintiff's action. In reaching this conclusion, the court stressed the purely economic injuries allegedly suffered by the plaintiff:

> Here the Borough's claim is for breach of a promise by the Administration to close timely, a default leading to purely economic harm. No person suffered any personal injury by reason of the Administration's alleged breach of duty nor was property damaged. Further, it cannot seriously be contended that the lost file had an intrinsic economic value as personal property similar to the surplus property in *Aleutco* so that if plaintiff had title to it this action could realistically be viewed as sounding in conversion.

839 F.2d at 163 (footnote omitted). *See also Ft. Vancouver Plywood Co. v. United States*, 747 F.2d 547 (9th Cir.1984) (collecting cases).

The present case does not involve purely economic harm or lost profits. It involves the physical destruction of property to the damage of the plaintiff, the intervening plaintiffs, and the third party plaintiff. And unlike *Petersburg*, the property that forms the basis for the claim does possess intrinsic economic value as personal property. The airplane destroyed near Grand Cayman Island is alleged by its owner to have had a value of at least $225,000.00. (Intervenors' Complaint, ¶ 8.) The claims presented against the United States involve traditional tort actions, both in form and substance, for the destruction of bailed property. The potential ability of the claimants to assert contract remedies does not limit their right to bring actions sounding in tort. *Aleutco*, 244 F.2d at 679.

The independence of tort and contract actions for immunity purposes has also been recognized by the Supreme Court. In *Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980), the plaintiff brought a claim for damage to property detained by the Customs Service. The Court of Claims had held that the plaintiff's tort claim was barred by 28 U.S.C. § 2680(c), which ex-

cepts from governmental liability under the Tort Claims Act any claim "arising in respect of ... the detention of any goods or merchandise by any officer of customs...." Not only was the tort action barred, the claims court had concluded also that the plaintiff's action for a breach of an implied-in-fact contract of bailment could not be maintained. The Court of Claims stated that to permit an action based upon a contract of bailment would be to "judicially allow by the back door a claim which was, rather clearly and explicitly, legislatively barred at the front". 217 Ct.Cl. 423, 579 F.2d 617, 621 (1978).

The Supreme Court assumed for purposes of the appeal that the tort claim was barred by § 2680(c).[1] It then concluded that such a bar did not preclude a claim for a breach of an implied-in-fact contract. In support of this conclusion, the Court cited both *New England Helicopter* and *Aleutco*. 444 U.S. at 465, 100 S.Ct. at 650. These cases both uphold the converse of the position adopted in *Hatzlachh:* that a limitation upon the ability to bring an action against the government sounding in contract did not in itself preclude the ability to bring an action sounding in tort.

This conclusion is also reflected in an earlier decision of the Court. In *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939), the plaintiff brought an action against a governmental agency, alleging the agency had failed to provide proper care for the plaintiff's cattle which the agency held under a bailment. The plaintiff alleged that the cattle were damaged as a result of the improper care. Occurring prior to the adoption of the Tort Claims Act, the governmental agency was immune to actions sounding solely in tort, but could be sued in contractual matters. 306 U.S. at 394, 59 S.Ct. at 520.

The government agency advanced the opposite of the position advanced by the United States in the present case: that the action for damage to bailed property was a tort action, for which the agency was immune. The Supreme Court rejected the argument, finding that the plaintiff's action included a contract element to which the agency could be held liable. There was, the Court concluded, "a choice of procedural vindications open to the injured party." 306 U.S. at 395, 59 S.Ct. at 521. The bailor could sue either for the tort, reflecting the failure to use due care in the maintenance of the bailed property, or in *assumpsit*, for the violation of the agreed undertaking to care for the property. *See also Jay–Ox, Inc. v. Square Deal Junk Co., Inc.,* 208 Kan. 856, 858, 494 P.2d 1103 (1972) (stating that "a bailor may have an election of remedies" by pursuing an action either in tort or in contract).

In summary, neither the presence of potential misrepresentation claims nor the possibility of contractual remedies require the court to ignore the negligence claims in the present case. The negligence claims arise from a duty of due care separate and independent of the duty of the United States to avoid misrepresentation of material information. Similarly, these claims for the physical destruction of the bailed airplane form the basis for a claim sounding in tort in both form and substance. The possibility of additional contractual remedies is not a bar to this court's consideration of the negligence claims.

The United States also makes two additional arguments. First, it contends that no valid claim for negligence is made in the present case. Second, in its memorandum in response, it advances the argument that the claims against it are barred by the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*

1. The Court noted the division among the circuits as to whether a tort claim for damages to property held in detention was barred by § 2680(c), or whether this section only excepted from the government's waiver of immunity those claims based upon the losses arising from the detention itself. 444 U.S. at 462 n. 3, 100

S.Ct. at 649 n. 3. In *Kosak v. United States,* 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984), the Court resolved the matter by taking the former position, ruling that 2680(c) applied to both the loss arising from the detention and damages to the property during detention.

For the first argument, the United States first cites to the general provision contained in 28 U.S.C. § 1346(b) which waives governmental immunity for claims arising through "the negligent or wrongful act or omission of any employee of the Government...." The United States then argues that Frank Raia and Michael Toliver, who were in possession of the aircraft, were not government employees, and that the only claims made against Blanton involve intentional misrepresentation.

■ Both arguments are mistaken. This court has found Raia to be immune precisely because he was a governmental employee acting within the scope of his employment. *Midland National Bank,* slip op. at 12 (D.Kan. Mar. 22, 1989) (1989 WL 31439). Moreover, as noted earlier there are specific allegations of negligence against the United States in its care and maintenance of the airplane. Finally, to the extent that the United States asserts a factual question as to the employment status of Raia and Toliver, it raises an issue which cannot be decided in a motion to dismiss.

■ The United States' argument relating to the Contract Disputes Act must also be rejected. The Contract Disputes Act applies to disputes relating to express or implied government procurement contracts. 41 U.S.C. § 602(a). Under the express terms of 28 U.S.C. § 1346(a), the district courts are denied jurisdiction over cases "not sounding in tort" which are subject to the Contract Disputes Act. The waiver of tort immunity contained in § 1346(b) contains no such express limitation.

While contractual claims are clearly subject to the terms and procedures of the Contract Disputes Act, the Act does not exclude district court jurisdiction over claims which sound in tort, both in form and substance. In support of its argument, the United States cites *Coffey v. United States on Behalf of Commodity Credit Corp.,* 626 F.Supp. 1246 (D.Kan. 1986).

In *Coffey,* Judge Crow determined that the plaintiff's action to obtain the government's performance of a payment-in-kind program contract and receive consequential damages, although couched in terms of "conversion," was essentially a contract action. Because the claim was in essence a claim for breach of contract, the court found it had no jurisdiction under the Tort Claims Act, and that the plaintiff's action instead was subject to the terms of the Contract Disputes Act. 626 F.Supp. at 1247. In reaching this conclusion, the court also recognized that under some circumstances "a breach of contract action and tort action can co-exist" in the same claim. *Id.,* at 1246.

The Contract Disputes Act does not alter the basic issue already addressed. The district court is without jurisdiction to address a plaintiff's tort claims only if the plaintiff's claim is essentially contractual in nature, and a tort action in name only. The presence of additional contractual elements is irrelevant, however, and the district court may address the plaintiff's claim so long as the claim presents in part a legitimate claim, in form and substance, sounding in tort. The principles recognized in *Keifer & Keifer* and *Aleutco,* as well as those in *New England Helicopter,* establish that the present case involves claims sounding in tort, and that this court possesses the jurisdiction to resolve those claims.

IT IS ACCORDINGLY ORDERED this 4 day of August, 1989, that the motion of the United States to dismiss the claims filed against it is granted to the extent that the claims allege misrepresentation or breach of contract; to the extent that the claims allege violation of a duty of care in the use and maintenance of the aircraft, the motion is denied.

The court has now set a final status conference on August 23, 1989, at 12:45 P.M., at which time scheduling will transpire with regard to the filing of a final pretrial order, settlement conference, and trial.